**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| MONUMENT CONSULTING, LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>XEROX CORPORATION, )<br><br>Defendant. ) | Civil No. 3:17-cv-298 (REP) |

## ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM

Defendants XEROX CORPORATION and CONDUENT, INC. (collectively "Defendants"), by the undersigned counsel, hereby Answer Plaintiff's Amended Complaint. The Answer and the Counterclaim were previously filed (ECF 18 and ECF 4, respectively) and are being re-filed pursuant to this Court's direction in chambers on August 16, 2017, at the parties' Initial Pretrial Conference.

## ANSWER

1.      Paragraph 1 is a legal conclusion which need not be admitted or denied. Plaintiff has indeed asserted the claims identified in Paragraph 1, though Defendants deny that these claims have any merit.

2.      In the first sentence of Paragraph 2, Defendants admit that they have demanded Plaintiff indemnify them for the losses caused by Plaintiff and/or its agents with respect to Plaintiff's performance under the parties' Master Services Agreement ("MSA"); Defendants deny that the payment Defendants made to the Commonwealth of Virginia was gratuitous. In the second sentence of Paragraph 2, Defendants admit that they were engaged in good faith settlement discussions with the Virginia Department of Medical Assistance Services ("DMAS")

and that they informed Plaintiff of this fact; Defendants deny the remaining allegations in the second sentence of Paragraph 2.  In the third sentence of Paragraph 2, Defendants admit that they paid DMAS the full amount DMAS demanded of Defendants and that Defendants, in turn, demanded indemnification from Plaintiff because it was Plaintiff's obligation to do so under the parties' MSA; Defendants deny the remaining allegations of the third sentence of Paragraph 2. Defendants deny the factual allegations in the fourth sentence of Paragraph 2.

3.      Denied.

4.      Denied.

5.      Paragraph 5 is a legal conclusion which need not be admitted or denied.  Plaintiff does indeed seek a declaratory judgment, though Defendants deny that Plaintiff is entitled to one.

6.      Defendants lack sufficient information to admit or deny the allegations in Paragraph 6, and accordingly, deny the same.

7.      Admitted.

8.      Admitted.

9.      Defendants admit the allegations in Paragraph 9 and aver further that, relevant to this action, these audit services included representing DMAS at Informal Fact Finding Conferences (IFFCs).   Plaintiff was hired to perform this latter work as Defendants' subcontractor.

10.     Admitted.

11.     Paragraph 11 is a legal conclusion that need not be admitted or denied.

12.     Paragraph 12 is a legal conclusion that need not be admitted or denied.

13.     Defendant denies the allegations in the Paragraph 13.   Plaintiff's claim also covers a period of time when Defendants and DMAS had no contractual relationship with each

other.  Defendants admit that they provided audit-related services for DMAS of the sort alleged in Paragraph 13.

14.     Admitted.

15.     Defendants admit Plaintiff and Defendants entered into a contract, the terms of which speak for themselves.  Defendants lack sufficient information to admit or deny the allegations in the second clause of Paragraph 15 and, accordingly, deny the same.

16.     Defendants admit that, under the MSA, Plaintiff agreed to indemnify Defendants under a variety of circumstances as outlined in §§ 16.1-16.2, and all subsections thereof.  The terms of the agreement speak for themselves and not necessarily as characterized by Plaintiff.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Defendants lack sufficient information regarding the contractual relationship between Plaintiff, Gateway, and Ms. Nunn such that they can admit or deny the allegations in Paragraph 21, and accordingly, they deny the same.

22.     Defendants admit that Ms. Nunn was engaged to provide services relating to the audit which is the subject of the underlying claim.  Defendants deny that Ms. Nunn actually provided those services.  Defendants admit the second and third sentences of Paragraph 22.

23.     Admitted.

24.     Admitted.  Defendants aver further that Plaintiff's failure to timely appear (either directly or through its agent and/or subcontractor) constituted a breach of the MSA and resulted

directly in the hearing officer's decision to dismiss DMAS's claim for $759,499.62 in Astrix's favor.

25.     Defendants admit that they did not attempt to reach a settlement or compromise with Astrix and avers further that it had no authority to do so and because Defendants had no claim against Astrix, such an attempt would have been otherwise futile.  Defendants lack sufficient information regarding DMAS's efforts, if any, to settle its claim with Astrix such that they can admit or deny that allegation in Paragraph 25, and accordingly, they deny the same.

26.     The first sentence of Paragraph 26 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants state that DMAS's rules and regulations identify the appeal procedure for claims, and these rules and regulations speak for themselves, not necessarily as Plaintiff has characterized them.  Defendants admit that neither DMAS nor Defendants formally appealed the dismissal, nor was there was any contractual obligation or authority for Defendants to do so.  However, Defendants did take steps to attempt to mitigate Plaintiff's breach and the resulting damages it caused.  Defendants lack sufficient information regarding DMAS's efforts, if any, to collect the overpayments from Astrix such that they can admit or deny that allegation in Paragraph 26, and accordingly, they deny the same.

27.     Defendants lack sufficient information regarding what notice DMAS provided to Plaintiff regarding Astrix's request to dismiss the appeal or the decision granting that dismissal such that they can admit or deny that allegation, and accordingly, they deny the same. Defendants deny the remaining allegations in Paragraph 27.

28.     Paragraph 28 contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 28.

29.    Defendants deny the allegations in the first sentence of Paragraph 29.  As to the second sentence of Paragraph 29, Defendants admit they were engaged in good-faith settlement discussions with DMAS regarding the loss Plaintiff's breach caused DMAS and for which DMAS had demanded Defendants pay.  Defendants admit further that they had hoped to and were attempting to reach a fair compromise with DMAS.

30.    Denied.

31.    Defendants' pleadings speak for themselves and not necessarily as characterized by Plaintiff.  To the extent Paragraph 31 contains factual allegations, Defendants deny them.

32.    Defendants deny the first sentence of Paragraph 32; the discussions resulted in an agreement in principle between Defendants and DMAS, but no such agreement was ever reduced to writing and was never formally approved by the final authority over such matters.  As to the second sentence of Paragraph 32, Defendants deny that the language purportedly quoted from DMAS's May 11, 2016, letter is accurate.  Defendants admit that the letter attached as Exhibit A to Plaintiff's Amended Complaint appears to be an accurate copy of a letter DMAS sent to Defendants on May 11, 2016.

33.    The terms of the May 11, 2016 letter speak for themselves and not necessarily as characterized by Plaintiff.

34.     Defendants deny the first sentence of Paragraph 34, averring further that the terms of the June 13, 2016 letter speak for themselves and not necessarily as characterized by Plaintiff.  Defendants admit that the letter attached as Exhibit B to Plaintiff's Amended Complaint appears to be an accurate copy of a letter Defendants sent to DMAS on June 13, 2016.

35.    The terms of the June 13, 2016 letter speak for themselves and not necessarily as characterized by Plaintiff.

36.     Denied.

37.     Defendants admit they made a formal written demand for indemnification from Plaintiff on June 24, 2016, in the amount of $749,499.62.   Defendants deny the remaining allegations contained in Paragraph 37.

38.     As to the first sentence of Paragraph 38, Defendants admit they were engaged in good-faith settlement discussions with DMAS regarding the loss Plaintiff's breach caused DMAS and for which DMAS had demanded Defendants pay; Defendants admit further that they had hoped to and were attempting to reach a fair compromise with DMAS and that they informed Plaintiff of the same.   Defendants admit they paid DMAS $749,499.62 for the error that was caused by Plaintiff failure to appear at the necessary hearing (either directly or through its agents/subcontractors) as generally averred to in Paragraph 23 of the Amended Complaint. Defendants deny the remaining allegations in Paragraph 38.

39.     Denied.

40.     Denied.

41.     Defendant denies both the factual allegations in Paragraph 41 and the characterization of its purported "duty" towards Plaintiff.

42.     Denied.

43.     Denied.

44.     Paragraph 44 contains legal conclusions to which no response is required. However, to the extent a response is necessary, this paragraph is denied as Plaintiff admitted its witness did not show up at the hearing averred to in Paragraph 23 when required.

45.     The allegations in Paragraph 45 are denied. As evidenced by the execution of the MSA, Plaintiff was fully aware of the scope of work that was required of it under the parties'

agreement.  Moreover, as Plaintiff has alleged, Plaintiff (or its agent) was the one who was responsible for placing Ms. Nunn in the position she was in, not Defendants.

46.     The allegations in Paragraph 46 are denied. As evidenced by the execution of the MSA, Plaintiff was fully aware of the scope of work that was required of it under the parties' agreement.

47.     Denied.

48.     Admitted.

49.     Admitted.

50.     Admitted.

**COUNT I – FRAUD AGAINST XEROX**

51.     Defendants' answers to the allegations set forth in the paragraphs above are incorporated by reference as if fully set forth herein.

52.     Denied.

53.     Defendants admit that in or about February 2016, Defendants informed Plaintiff that they were engaged in good-faith settlement discussions with DMAS to attempt to mitigate DMAS's loss caused by Plaintiff's failure to perform under the MSA.

54.     As to the first sentence in Paragraph 54, Defendants admit that they informed Plaintiff that they were engaged in good-faith settlement discussions with DMAS to attempt to mitigate DMAS's loss caused by Plaintiff's failure to perform under the MSA.  As to the second, sentence, Defendants deny that it "reneged" on a "settlement agreement" with DMAS as there was no settlement agreement nor did Defendants "renege" on it.  As to the third sentence in Paragraph 54, Defendants state that the June 24, 2016 letter speaks for itself and not necessarily as Plaintiff characterizes it.  Defendants aver further that they were at all relevant times

attempting to negotiate a settlement with DMAS for less than the amount DMAS was demanding from Defendants.

55.     Defendants deny the allegations in the first two sentences of Paragraph 55.  As to the third sentence, Defendants deny Plaintiff's characterization of Defendants' "obligation" under the MSA.  No such obligation exists in the MSA.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Paragraph 59 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 59.

60.     Paragraph 60 states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 60.

### COUNT II – BREACH OF CONTRACT AGAINST DEFENDANTS

61.     Defendants' answers to the allegations set forth in the paragraphs above are incorporated by reference as if fully set forth herein.

62.     Admitted.

63.     The terms of the parties' MSA speak for themselves and not necessarily as Plaintiff characterizes them.  Defendants deny that any such "obligation" exists under the cited provision (or any other provision) of the MSA.

64.     The terms of the parties' MSA speak for themselves and not necessarily as Plaintiff characterizes them.  Defendants deny that any such "obligation" exists under the MSA.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.  Defendants also deny specifically that it breached any term of the MSA much less committed "multiple breaches."

77.     Denied.

**COUNT III – DECLARATORY JUDGMENT AGAINST DEFENDANTS**

78.     Defendants' answers to the allegations set forth in the paragraphs above are incorporated by reference as if fully set forth herein.

79.     Paragraph 79 states a legal conclusion to which no response is required.

80.     Paragraph 80 states a legal conclusion to which no response is required.  The terms of the contract between the parties speak for themselves.

81.     Defendants admit that Plaintiff seeks a declaratory judgment but denies that any such declaratory judgment is proper where, as here, the parties are asserting breach of contract against each other. Defendants deny further that Plaintiff is not required to honor its contractual obligations and indemnify Defendants for the payment they made to cure the damages that were caused by Plaintiff (and its agents).

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to the relief sought in its Amended Complaint.

## AFFIRMATIVE DEFENSES

1.      Plaintiff fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims are barred by the doctrines of waiver and release.

3.      Plaintiff's claims are barred by estoppel.

4.      Plaintiff is liable to indemnify Defendants.

5.      Plaintiff's damages, if any, are the result of actions by third parties.

6.      Plaintiff's claim is barred by the doctrine of unclean hands.

7.      Plaintiff's claim is barred by its own breach of contract.

8.      Plaintiff assumed the risk of any damages it has sustained.

9.      Plaintiff failed to perform all conditions precedent.

10.     Plaintiff's reliance, if any, was not reasonable.

11.     Plaintiff has failed to allege Defendants' representations were false.

12.     Plaintiff has failed to allege Defendants' representations concerned their present intent to perform future actions.

13.     Plaintiff has failed to allege that Defendant's representations were made with any intent to deceive.

14.     Plaintiff has not suffered any damages.

15.     Plaintiff has not alleged Defendant's conduct breached any contractual duties.

16.     Defendant reserves the right to assert other defenses as they become apparent or available during the course of this case.

## COUNTERCLAIM

Defendant Conduent, Inc., as assignee to Xerox Corporation ("Conduent" or "Defendant"), by undersigned counsel, hereby asserts the following Counterclaim against Plaintiff Monument Consulting, LLC ("Plaintiff").

## PARTIES, JURISDICTION, AND VENUE

1.      Counterclaimant Conduent, Inc. ("Conduent") is a New York corporation with its principal place of business in New Jersey.  As such, it is considered a citizen of both New York and New Jersey.

2.      Effective January 2017, Xerox assigned all of its rights and obligations under the MSA to Counterplaintiff Conduent.

3.      Counterdefendant Monument Consulting, LLC ("Monument") is a Virginia limited liability corporation with its principal place of business in the Commonwealth of Virginia. Monument's sole member is a citizen of Delaware and Georgia.

4.      This Court has subject-matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332 because the parties are diverse, and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction over this Counterclaim under 28 U.S.C. § 1367.

5.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because Monument resides in this district, and the events giving rise to this Counterclaim occurred in this district.

## FACTUAL BACKGROUND

### The Agreement Between DMAS and Xerox

6.      On or around July 11, 2013, the Commonwealth of Virginia Department of Medical Assistance Services ("DMAS") solicited proposals from health care auditing firms to

11

perform audits and related services of certain pharmacies and durable medical equipment providers that participate in Virginia's Medicaid program.

7.     On or around August 19, 2013, Xerox Corporation ("Xerox") submitted a response to DMAS's proposal for audit and related services.

8.     After reviewing different parties' responses to its proposal, DMAS awarded the service contract to Xerox in 2013, and Xerox began to perform the audit services and related services outlined in the proposal.

9.     As part of its audit responsibilities, Xerox was responsible for identifying providers which received payments from the Commonwealth that were in error.

10.    When such payment errors were identified, DMAS notified the provider of such overpayment and requested reimbursement.  The provider could avail itself of an appeal procedure if it disputed DMAS's claim.

11.    Under the contract, Xerox was responsible for providing necessary testimony and defense of its audits at any appeal proceedings which might follow DMAS's claims for reimbursement.  This required, among other things, attendance at mandatory appeals hearings.

**The Agreement Between Xerox and Monument**

12.    To perform some of its duties under its contract with DMAS, Xerox entered into a Master Services Agreement ("MSA") with Monument whereby Monument agreed to provide certain support services in aid of Xerox's audit services for DMAS.  This MSA is attached hereto as **Exhibit A**.

13.    Under the MSA and corresponding Statements of Work ("SOW"), Monument agreed to provide support services for the duties described above in Paragraph 10, including providing personnel to attend mandatory hearings that were part of the appeals process.

14.    The MSA also contained an indemnification clause whereby Monument agreed to defend, indemnify, and hold harmless Xerox, its affiliates, subsidiaries and their respective officers, directors, employees and agents from all liabilities, damages and expenses and claims for damages, suits, proceedings, recoveries, judgments, costs, losses, penalties, fines or executions (including reasonable attorneys' fees) that are made, had, brought, or recovered against Xerox arising from Monument's acts or omissions in its performance of the MSA or its failure to comply with the MSA.

**The Subject Audit, Subsequent Appeal, and Monument's Failure to Appear**

15.    During a 2015 audit, Xerox identified an overpayment by DMAS to Astrix Medical Supplies ("Astrix") in the amount of $749,499.62.  DMAS thereafter issued a claim against Astrix for that amount.  Astrix appealed this claim on August 6, 2015.

16.    On August 18, 2015, DMAS sent Xerox a letter informing it of the appeal filed by Astrix, and Xerox thereafter informed Monument of the same.

17.    Monument hired Christine Nunn to participate in the upcoming hearing related to Astrix's appeal as part of its agreement under the MSA to provide support services to Xerox.  As such, Ms. Nunn—as Monument's contractor—was to attend the hearing to defend DMAS's claim and Xerox's audit.

18.    On September 10, 2015, DMAS informed Xerox and Monument by letter of the upcoming Informal Fact Finding Conference ("IFFC"), which was scheduled for October 26, 2015 at 9:30 a.m.  The hearing was to be held at DMAS's office in Richmond, Virginia.

19.    Despite knowledge of the date, time, and location of the hearing, Monument failed to appear at 9:30 a.m. on October 26, 2015.

20.     As a result of Monument's failure to timely appear when required at the hearing, Astrix requested that its appeal be granted and DMAS's claim be denied.  Xerox opposed this request in an effort to mitigate the loss to DMAS and Monument's breach of its duties.

21.     Despite Xerox's opposition, Astrix's request was granted on December 22, 2015, and DMAS's claim for $749,499.62 was denied.

### Xerox is Assessed Damages by DMAS as a Result of Monument's Actions

22.     Pursuant to Xerox's contract with DMAS, DMAS assessed damages to Xerox in the amount of the dismissed claim, $749,499.62.

23.     The damages were assessed because DMAS's claim was dismissed due Monument's failure to timely appear at the proceeding relating to the claim for reimbursement.

24.     On February 15, 2016, Xerox proposed to mitigate DMAS's loss by providing DMAS with additional audits where the audit findings were equal to 50% of DMAS's damages, or $379,749.81.

25.     By letter dated May 11, 2016, DMAS tentatively agreed to Xerox's proposal for payment of DMAS's damages with in-kind services and requested Xerox provide a written contract modification regarding the same within the next 30 days.

26.     Before the 30 days had expired, DMAS rejected this offer, and Xerox thereafter proposed a cash payment in the same amount.

27.     Though DMAS initially agreed to a cash payment in the amount of $379,749.81 to mitigate its loss, the Attorney General—who needed to approve any such settlement— declined to accept Xerox's offer and insisted that Xerox account in full for Monument's error.

28.      As such, on September 15, 2016, DMAS formally assessed Xerox $749,499.62 under the parties' contract for DMAS's loss of its right to collect the overpayment in the same amount.

29.      Xerox paid DMAS the $749,499.62 in damages caused by Monument's failure to appear.

30.      On September 21, 2016, DMAS terminated its service contract with Xerox effective October 31, 2016.

**Xerox Demands Indemnification and Monument Refuses**

31.      Under the terms of the MSA, Xerox sought indemnification from Monument in the amount of $749,499.62.  Xerox's letter seeking indemnification from Monument is attached hereto as **Exhibit B**.

32.      The MSA requires that Monument indemnify Xerox, now Conduent, for this loss.

33.      Monument, without explanation, however refuses to do so, notwithstanding that it admits it breached its obligation to Xerox, now Conduent, and was fully aware that this breach lead to the damages incurred.

34.      Monument's breach of the MSA and its refusal to honor its terms caused damages to Xerox, now Conduent.

35.      All conditions precedent have occurred or otherwise have been waived.

**COUNT I – (Breach of Contract)**

36.      Conduent incorporates all previous paragraphs as if restated fully herein.

37.      Monument breached the MSA by failing to appear when required to support DMAS's claim for reimbursement.

38.     Monument's failure to appear caused the claim for reimbursement to be dismissed.

39.     DMAS in turn then asserted a claim against Xerox, now Conduent, for the sums which were due and owing to it but for which it did not receive due to Monument's breach.

40.     Xerox, now Conduent, thereafter incurred damages as a result of Monument's breach in the amount of $749,499.62.

41.     Under the MSA, Monument is obligated to reimburse and indemnify Xerox, now Conduent, for this loss along with its attorneys' fees.

42.     Xerox, now Conduent, made a demand on Monument to indemnify it, but Monument refuses to do so.

43.     As a result of the foregoing, Conduent has incurred damages in the amount of $749,499.62, exclusive of costs and fees, including attorneys' fees, which are collectible under the MSA's indemnification provision.

**WHEREFORE**, Conduent prays for the following relief:

a.      a judgment in Conduent's favor against Monument for breach of contract;

b.      an award of $749,499.62, plus all applicable pre- and post-judgment interest;

c.      an award of all costs and fees, including reasonable attorneys' fees and;

d.      all other relief as the Court deems just and proper.

Dated:  August 25, 2017                    Respectfully submitted,


                                           _____/s/_____
                                           Michelle D. Gambino (Va. Bar No. 70708)
                                           e-mail:  gambinom@gtlaw.com
                                           David G. Barger (Va. Bar No. 21652)
                                           e-mail: bargerd@gtlaw.com
                                           Michael A. Hass (Va. Bar No. 74974)
                                           e-mail:  hassm@gtlaw.com
                                           GREENBERG TRAURIG, LLP
                                           1750 Tysons Boulevard, Suite 1000
                                           McLean, Virginia  22102
                                           Tel:   (703) 749-1300
                                           Fax:  (703) 749-1301

                                           *Counsel for Defendants/Counterplaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of August, 2017, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

> J. Michael Showalter (VSB No. 72272)
> Matthew F. Prewitt (admitted *pro hac vice*)
> Mark T. Doerr (admitted *pro hac vice*)
> SCHIFF HARDIN LLP
> 233 South Wacker Drive, Suite 6600
> Chicago, Illinois 60606
> Phone: (312) 258-5561
> Fax: (312) 258-5600
> e-mail: mshowalter@schiffhardin.com
> e-mail: mprewitt@schiffhardin.com
> e-mail: mdoerr@schiffhardin.com
>
> *Counsel for Plaintiff/Counterdefendant,*
> *Monument Consulting, LLC*

      /s/
_____
Michelle D. Gambino (Va. Bar No. 70708)
e-mail:  gambinom@gtlaw.com
David G. Barger (Va. Bar No. 21652)
e-mail: bargerd@gtlaw.com
Michael A. Hass (Va. Bar No. 74974)
e-mail:  hassm@gtlaw.com
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia  22102
Tel:   (703) 749-1300
Fax:  (703) 749-1301

*Counsel for Defendants/Counterplaintiff*
